367 So.2d 1289 (1979)
Maurice LOUPE, Jr., et al.
v.
Thomas A. TILLMAN et al.
No. 9489.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 1979.
Rehearing Denied March 14, 1979.
*1290 Hackman & Lewis, Gordon Hackman, Boutte, for plaintiffs-appellants.
Earl G. Pitre, Metairie, for defendant-appellee.
Before SAMUEL, GULOTTA, BOUTALL, BEER and GARRISON, JJ.
SAMUEL, Judge.
Plaintiffs, husband and wife, filed this suit for property damages and personal injuries sustained by the driver-wife and plaintiffs' minor son (a guest passenger) in an automobile accident which occurred on November 24, 1975. Defendants are Thomas A. Tillman, driver of the other vehicle,[1] and Thomas Freeman, a guest passenger in that vehicle, and Hartford Accident & Indemnity Company, plaintiffs' automobile liability insurer, based on their policy which contained an uninsured motorist provision. No service was made on the individual defendants and the matter went to trial only as against Hartford.
Following trial, judgment was rendered dismissing plaintiffs' suit against Hartford based on a finding that plaintiffs had failed to carry their burden of proof as to the uninsured status of the defendant driver-owner. Plaintiffs have appealed.
The record establishes that the plaintiff-wife was traveling on Airline Highway, proceeding in the direction of New Orleans, when the defendant vehicle pulled out of a parking area adjacent to a lounge and turned directly in front of the plaintiff car, causing a head-on collision. It is clear the accident resulted solely from the negligence of the defendant-driver and Hartford does not argue otherwise.
Tillman had an expired Texas driver's license, gave police an address in Illinois as his residence, and stated to the police that he was residing in Metairie, Louisiana at the time of the accident. The guest passenger gave no address.
The uninsured status of the offending motorist is a condition precedent to an insured's recovery against his insurer which must be alleged and proved. This burden rests with plaintiff.[2]
The controlling statute here is LSA-R.S. 22:1406D(6) prior to its amendment by Act 543 of 1978. At the time of trial (April 7, 1977) the statute read:
"(6) In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy, the following evidence shall be admissible as prima facie proof that the owner and the operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question:
(a) The introduction of sworn notarized affidavits from the owner and the operator of the alleged uninsured vehicle attesting to their current addresses and declaring that they did not have automobile liability insurance in effect covering the vehicle in question on the date of the accident in question. When the owner and the operator of the vehicle in question are the same person, this fact shall be attested to in a single affidavit.
(b) A sworn notarized affidavit by an official of the Casualty and Surety Division to the effect that on the date of the accident in question, neither the owner nor the operator, if both are residents of the State of Louisiana, had in effect a policy of automobile liability insurance. This affidavit shall be served by certified mail upon all parties fifteen days prior to introduction into evidence.
(c) Any admissible evidence showing that the owner and operator of the alleged uninsured vehicle was a nonresident or not a citizen of Louisiana on the date of the accident in question, together with *1291 a sworn notarized affidavit by an official of the Casualty and Surety Division to the effect that on the date of the accident in question, neither the owner nor the operator had in effect a policy of automobile liability insurance.
(d) The effect of the prima facie evidence referred to in (a), (b) and (c) above is to shift the burden of proof from the party or parties alleging the uninsured status of the vehicle in question to their uninsured motorist insurer." LSA-R.S. 22:1406D(6).
Plaintiffs presented the following evidence regarding the uninsured status of Tillman: Mr. Darrell Bargainnier, claims manager for the defendant insurer, was called on cross examination under the act. He was not under subpoena, was not in court in response to a subpoena duces tecum and was permitted to testify without objection on the part of defendant counsel. He testified he was familiar with plaintiffs' claim and their policy and had reviewed the file as to the uninsured motorist claim. He admitted receiving information from the Louisiana Department of Insurance that there was no evidence of insurance for Tillman in this state.
Bargainnier further testified: His company made exhaustive and expensive efforts to track down Tillman, sending a personal contact to the Metairie address. There was no response. Letters sent by the insurer to Tillman's Illinois address were returned "Moved, left no forwarding address." Thereafter the insurer's Illinois office checked the address given by the driver in that state and determined Tillman was a very transient person. The insurer employed an investigator to check all known addresses. Since Tillman was not located in New Orleans, they tried the apartment complex in Texas where he allegedly resided. The insurer used outside and inside investigators on their own staff and an independent investigator trying to locate Tillman, but were unable to do so. The Illinois authorities told Hartford they had no information on Tillman.
Bargainnier expressed no disagreement with the information received at his own request from the Louisiana Department of Insurance showing no insurance coverage in this state, but refused payment because he was of the opinion Tillman's uninsured status had not been established (possibly because the company had been unable to locate Tillman or to determine from the insuring authorities of one or the other states that Tillman was uninsured).
Plaintiffs and Hartford entered into numerous stipulations at the trial. In addition, plaintiffs' attorney had subpoenaed records pertaining to Tillman from the Louisiana State Department of Insurance. Since there was no response to the subpoena, plaintiffs anticipated a stipulation from the insurer's attorney that this state had no record of liability insurance for Tillman at any of the three addresses. The insurer's attorney refused this broad stipulation stating "They have no such record of coverage in Louisiana but they can't comment on coverage in Texas and Louisiana". She then reserved her right to question the plaintiff-wife as to any medical problems and periods of employment.
There is no affidavit in the record which would establish a prima facie case strictly under the provisions of LSA-R.S. 22:1406D(6), which affidavit would remove the burden of proof from the plaintiffs and place that burden on defendant. Hence, the plaintiffs have the burden of proving by other evidence that the owner and/or the driver of the offending vehicle were uninsured.[3] We are satisfied the evidence adduced, particularly the testimony of Bargainnier and the documentary evidence of Hartford's entire file, is sufficient to prove the defendant-driver-owner is an uninsured motorist. Under the circumstances here, we can conceive of no further proof an *1292 insured could make or should be required to make. Since sufficient other proof was offered, the introduction of the affidavit provided by LSA-R.S. 22:1406D(6), which alone would have been prima facie evidence and would result in shifting the burden to defendant, is unnecessary.

QUANTUM
Maurice Loupe, III, a minor (whose age is not apparent in the record but who was described by his mother as "my little boy") was knocked out of the bucket seat and had a bruise on the left side of his neck, back and shoulder. He was very frightened for some time thereafter while riding in an automobile. Two weeks after the accident he was seen by his pediatrician, Dr. Joseph J. Isolani, because of continued complaints of pain in the jaw. Physical examination was negative except for a contusion still evident on the left side of the child's face.
It is stipulated that the doctor charged $10. We award $500 for personal injuries sustained by the child.
Latina J. Loupe, the 29 year old driver of the plaintiff vehicle, hit the left side of her head on the door. Her elbows broke the steering wheel. She was taken to East Jefferson Hospital where she received emergency treatment. X-rays were taken which were negative for fracture or dislocation.
She saw her family physician, Dr. David J. Vial, on December 2, 1975, approximately a week after the accident. The doctor found multiple abrasions of the right hand, right knee, and multiple contusions of the left shin, left hip, both elbows and head and generalized stiffness and myositis of the neck, lumbar spine, left thigh and lower left leg. She was treated on a conservative basis and seen on five follow-up visits until January 16, 1976. At that time she had a small nodule one inch below the left knee which prevented full flexion. The doctor concluded the nodule was a residual hematoma. She wore a knee brace for two months. There was discoloration in the area of the abrasions on the right hand and in the area of the cut on the right knee. The knee pain persisted for four months. Plaintiff returned on October 21, with complaints of headaches. Analgesics and tranquilizers were prescribed at that time.
Dr. Vial charged $85. At the time of trial plaintiff still had scars as a result of the accident. As described by the trial court, they consisted of a bony protrusion two inches below the left kneecap three-fourths inch in diameter, a very slight discoloration one and one-half inch beneath the right thumb, one and one-half inch long, and a small discoloration about one inch beneath the third finger of the right hand. (The trial was April 7, 1977, about 1½ years after the accident.) Mrs. Loupe is the plant nurse at Beker Industries in Hahnville. She earns $34.64 per day and missed four days following the accident.
We award Mrs. Loupe $138.56 for loss of wages, $85 for medical expenses,[4] and $3,500 for personal injuries.
We make no award for property damage because damage to property is not recoverable under the uninsured motorist provision of the policy.[5]
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment against the defendant, Hartford Accident & Indemnity Company, and in favor of Maurice Loupe, Jr., individually, in the sum of $10, and in the sum of $500 on behalf of his minor son, Maurice Loupe, III, and in favor of Latina J. Loupe in the sum of $3,723.56, together with legal interest from date of judicial demand until paid. All costs in both courts are to be paid by the defendant, Hartford Accident & Indemnity Company.
REVERSED.
BEER, J., dissented with written reasons.
BEER, Judge, dissenting.
I respectfully dissent, being of the view that the trial judge was correct in dismissing plaintiff's suit.
NOTES
[1] The police report shows Tillman was also the owner of the vehicle.
[2] Talazac v. Phoenix of Hartford Insurance Company, La.App., 259 So.2d 636; Bullock v. Perry, La.App., 238 So.2d 796; Manuel v. American Employers Insurance Company, La. App., 212 So.2d 527; Vitrano v. State Farm Mutual Automobile Ins. Co., La.App., 198 So.2d 922; Macaluso v. Watson, La.App., 188 So.2d 178.
[3] Although the particular holding subsequently was deleted by Per Curiam, because the court later found the statute inapplicable due to the fact that it had been adopted prior to the time of trial, we note that in Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81, 84, the Supreme Court had before it the identical statute involved here and it originally held that plaintiff's failure to introduce the proper affidavit simply resulted in the burden of proof remaining with the plaintiff.
[4] She is legally separated from her husband and consequently we do not make the award to him.
[5] We note that defendant paid property damage under other provisions of the policy.